### R. H. and A. McCoy *vs.* LORD.

The defendants conveyed to the plaintiffs certain lands, by a deed containing a *covenant for quiet enjoyment.* Previous to the sale a part of the lands had been returned to the comptroller, and sold by him for unpaid taxes. On the last day for the redemption of the lands, the plaintiffs paid the amount of such taxes, and the charges, into the comptroller's office, and redeemed the lands from the sale. *Held,* that an action would not lie to recover from the defendant the amount so paid; the payment having been made voluntarily, and without any request on the part of the defendant, and there having been no eviction.

IN January, 1846, the defendant conveyed to the plaintiffs certain lands in Cattaraugus county, by a deed containing *a covenant for quiet enjoyment.* Previous to the sale, a part of the lands had been returned to the comptroller, and sold by him for unpaid taxes. On the 16th day of December, 1850, being the last day for the redemption of the lands, and before the time to redeem had expired, the plaintiffs paid the amount of such taxes, and the charges, into the comptroller's office, and redeemed the lands from the sale. This action was brought to recover the money so paid. The cause was tried at the Cattaraugus circuit in September, 1853, by the court, without a jury. The facts above stated having been proved, the court decided that the action could not be maintained; there having been no payment of money at the request of the defendant, and no eviction. The plaintiffs appealed.

*H. W. Harrington,* for the appellants.

*A. G. Rice,* for the defendant.

*By the Court,* GREENE, J. The plaintiffs have alleged in their complaint, and were bound to prove on the trial, that the money which they seek to recover in this action was paid by them at the defendant's request. No express request was proved, but the plaintiffs insist that from the facts proved on the trial the law implies a request, and adjudges the defendant liable to pay accordingly.

McCoy *v.* Lord.

Upon principle this seems to be a very clear case. The plaintiffs purchased a piece of land of the defendant, and in the conveyance which they took provided for their own security by such a covenant as they thought proper to exact and the defendant was willing to execute. The rights of the parties under that covenant are well settled and understood, and there is no pretense that it has been broken. But it is supposed that there is something in the peculiar circumstances of this case from which the plaintiffs derived a right to pay the money in question and charge the defendant with it in this action. And the cases of *Hunt* v. *Amidon*, (4 *Hill*, 345 ;) *McCrea* v. *Purmort*, (16 *Wend.* 460 ; *S. C. 5 Paige*, 620 ;) and *Exall* v. *Partridge*, (8 *Durn. & East*, 308,) are cited. In *Exall* v. *Partridge*, the plaintiff had left his carriage with one of the defendants for repairs, upon premises which had been leased to all the defendants, and upon which rent was then due. The carriage was distrained for rent, which the plaintiff was compelled to pay to procure its release. The plaintiff paid the rent and brought his action for money paid to the use of the defendants. The court sustained the action, on the ground that the defendants, being liable to pay the rent, and the plaintiff having been *compelled* to pay it to procure the release of his carriage from the distress warrant, the law implied a promise to refund the money. It will be observed that the defendant Partridge was responsible to the plaintiff for the safe return of the carriage, and the only question raised at the trial, and upon which Lord Kenyon nonsuited the plaintiff, was that the other defendants had assigned their interest in the lease before the carriage was left with Partridge, and that the plaintiff had knowledge of this fact. In the case of *McCrea* v. *Purmort*, the plaintiff, Purmort, prior to 1812, was in possession of 35 acres of land under color of title. Having discovered that the title was in McCrea, he entered into a contract with him to purchase it, and afterwards, and before McCrea conveyed to him, mortgaged it to the state for $1000. The state foreclosed the mortgage, and on the sale the land was bid off in the name of McCrea. Afterwards, and in 1819, McCrea and Purmort made another arrangement, by which McCrea conveyed to Purmort

and took his bond and mortgage for the amount due on the contract of 1812 and the state mortgage, representing to Purmort that he had paid that mortgage. The mortgage given by Purmort in 1819 was paid by him, and the state mortgage not having been paid, the attorney general commenced a foreclosure against Purmort, whereupon he filed a bill against the attorney general and McCrea, setting forth these facts and praying that McCrea might be decreed to pay the state mortgage, and that the suit commenced by the attorney general might be stayed until the other suit could be got at issue, and that both suits be heard together. On the hearing of the suit brought by Purmort against McCrea, the chancellor decreed that McCrea should pay the state mortgage and the costs of both suits. This decree was affirmed in the court for the correction of errors. In this case it will be seen that Purmort had been induced to pay McCrea the amount due on the state mortgage, by the representation of McCrea, that he had already paid or become liable to pay it, and had provided for it; and the chancellor held that he was bound in equity to make that representation good. The late Justice Cowen, who delivered the opinion in the court for the correction of errors, discussed at length the question as to the right of the complainant to show by parol evidence the true consideration of the deed from McCrea to Purmort, and held that a different consideration might be shown from that expressed in the deed. It is clear that this case has no application to the one under consideration. In the case of *Hunt* v. *Amidon,* a conveyance of land had been made by Amidon to one Wheeler, who gave Amidon a bond and mortgage to secure a part of the purchase money. Amidon assigned the mortgage to one Taylor. Afterwards Wheeler reconveyed to Amidon, who gave Wheeler a bond of indemnity against his bond. Amidon then conveyed to one Babcock with warranty, who conveyed to Hunt, the plaintiff, by quitclaim. Taylor afterwards commenced a foreclosure of his mortgage, obtained a decree of foreclosure, and sold the premises. On the sale Hunt bid in the premises for $470, and brought an action against Amidon for money paid to his use. The supreme court held that the action could not be sustained.

McCoy *v.* Lord.

The court for the correction of errors reversed the judgment: Chancellor·Walworth, who delivered the opinion, holding that the decree and the sale under it, in the foreclosure suit, amounted to an *eviction*, in equity. Upon this ground the plaintiff was clearly entitled to recover for the breach of the covenant of warranty in the deed to Babcock, his grantor.

These cases are all distinguishable from the case under consideration by peculiar facts existing in each case, upon which the judgment of the court was clearly founded. This fact renders criticism, which is precluded by the authority of the last two cases, unnecessary in all. It is sufficient that none of them afford any authority for this action. The plaintiffs' covenant for quiet enjoyment has never been broken, for the reason that there never was any eviction. They were not compelled by legal process to pay, as was the case in *Hunt* v. *Amidon* and *Exall* v. *Partridge*. And as they had no covenant against incumbrances, they had no right to pay them voluntarily and without any request on the part of the defendant, and charge him with such payment. · It is no answer to say that it would be a hardship for the plaintiffs to be compelled to wait until they were evicted and then sue for the purchase money and lose the enhanced value of the land and improvements. But for the covenant for quiet enjoyment they could not even recover the purchase money, in a case free from fraud ; and if they desired a remedy adequate to other contingencies, they should have provided for it by appropriate covenants. These covenants have been long in use, and the rights and remedies of parties under them have been long and well settled; and it is a sufficient answer to this action, under such circumstances, that there is no·precedent for it.

I think the judgment should be affirmed.

Judgment affirmed.

[GENESEE GENERAL TERM, September 4, 1854. *Marvin, Bowen* and *Greene,* Justices.]